UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEROY GARDNER,<br>    *Plaintiff*,<br><br>vs.<br><br>QUINSIGAMOND COMMUNITY<br>COLLEGE, and ARLENE JAMES in her<br>Official capacity as a Professor at<br>Quinsigamond Community College<br>    *Defendants*. | Civil Action No.: 22-40107 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### THE PARTIES

1. The Plaintiff, Leroy Gardner, is an individual residing at 1800 Soldiers Field Road in Boston, Massachusetts 02135. Gardner is a Nigerian man, and a member of a protected class.

2. The Defendant, Quinsigamond Community College ("QCC"), is a public community college, located on 670 West Boylston Street in Worcester, Massachusetts 01606. QCC receives federal funding for its educational programs.

3. The Defendant, Arlene James in her official capacity, is a part-time faculty member and instructor at QCC since September 7, 2010.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

5. Venue in the District of Massachusetts is proper under 28 U.S.C. §§ 1391 (b-c) because the Defendant maintains its facilities and business operations in this District; all or most of the events given rise to this action occurred in this District; and because the Defendant is located there.

### FACTS

6. From June 28, 2021, to August 3, 2021, the Plaintiff was enrolled in a Medical Administration Training class at QCC. The Medical Administration Training class was a

1

    non-credit course operated by QCC's Center for Workforce Development & Continuing Education.

7. At all times relevant, Arlene James was the instructor of the Medical Administration Training class.

8. At all relevant times, the Plaintiff was the only Nigerian student, out of ten, enrolled in James's Medical Administration Training class.

9. Between June 28, 2021, and August 3, 2021, James made repeated disparaging racial remarks about Nigerians that inferred the Plaintiff had a propensity for untrustworthiness and academic dishonesty based on his race/ethnicity.

10. Specifically, James told the class—including the Plaintiff—that she had an online romantic relationship with a Nigerian man whom she helped gain passage to the United States but that he stayed with her long enough to clean out her bank accounts and take out high interest loans in her name.

11. James did not stop there; she also stated, to wit: "you can't trust Nigerians. They'll steal your money" and that "some races" have credibility issues—namely—Nigerians and black people.

12. Because of James's racially disparaging remarks about Nigerians, the Plaintiff's classmates made comments aloud—reflecting James's remarks—which drew laughter from other students while in the Plaintiff's presence.

13. Specifically, when the class's lesson plan covered ethics in the medical field, one of the Plaintiff's classmates said "Nigerians" which caused the class to laugh.  This recurred when the lesson plan covered patients from diverse cultures.  James never discouraged these actions.

14. Between June 28, 2021, and August 3, 2021, when the Plaintiff and the class took an online examination, James stated to the class that the Plaintiff, in particular, needed to show his work area to her because she needed to see the area to be sure the Plaintiff was not cheating.  The Plaintiff was singled out by James, and he had to remain in a highly visible location for James to monitor.

15. Between June 28, 2021, and August 3, 2021, during a remote class, James required the Plaintiff to remain motionless in front of his webcam.  And if the Plaintiff failed to do so, James would scream at the Plaintiff for "suspicious" movements.  No other students in the class were subjected to the same or similar treatment.

16. Between June 28, 2021, and August 3, 2021, during an in-person exam, the Plaintiff was singled out from the rest of the class, again.  This time, like each aforementioned instances, James stood directly above the Plaintiff to monitor him taking his exam.

17. On or about August 2, 2021, the Plaintiff brought his concerns about being singled out by James to Kathleen Manning, the Dean of Center for Workforce Development & Continuing Education ("Dean Manning").

18. Upon information and belief, James confirmed to Dean Manning that James did in fact made statements to the Plaintiff and the class that "you can't trust Nigerians.  They'll steal your money."

19. Between June 28, 2021, and August 3, 2021, James assigned a remote exam for the Plaintiff and the class to take.  On the exam prompt, James used the hypothetical address: "123 Plantation Street."  This offended the Plaintiff even though James said that there was a street named Plantation in Worcester.  Regardless of the racial implications that the word "Plantation" elicits, James instructed the Plaintiff that he needed to accept the term "Plantation" to receive a certificate for the class.

20. The Plaintiff subsequently brought this incident to the attention of Thereasa Vecchio, the Dean of Students, because the term "Plantation" was racially offensive—Vecchio agreed with the Plaintiff.

21. Upon information and belief, the Plaintiff also brought up James disclosing her private life of online dating a Nigerian man to Vecchio, in turn, Vecchio thought James's disclosure was "very inappropriate."

22. On or about August 5, 2021, the Plaintiff contacted Liz Woods, QCC's Dean of Compliance and Education, and the Plaintiff expressed his concerns about James by advising Dean Woods that he felt discriminated against by James.

23. On or about September 1, 2021, in response to the Plaintiff's concerns, Sara Simms, the Affirmative Action Officer at QCC, investigated Gardner's allegations by interviewing James, Dean Manning, and other individuals identified as witnesses to the Plaintiff's discriminatory treatment.

24. Upon information and belief, Simms completed her investigation and found, in relevant part:

    a. That the Plaintiff's academic performance was satisfactory based on the grade sheet that Dean Manning reviewed.

    b. That the Plaintiff was treated differently from similarly situated, qualified students not of the complainant's protected class.

    c. That the Plaintiff was being harassed due to his protected class—specifically—James shared her romantic relationship with a Nigerian man, in which other students were allowed to continue to make comments about Nigerians.

    d. That the Plaintiff was subjected to unwelcomed verbal and/or physical conduct based on a protected classification.

    e. That the Plaintiff was subjected to unwelcomed verbal and/or physical conduct based on a protected classification and was sever or pervasive enough to have the purpose or effect of unreasonably interfering with the Plaintiff's education.

    f. That the Plaintiff was subjected to unwelcomed verbal and/or physical conduct based on a protected classification, and did create an objectively intimidating, hostile or offensive educational environment.

    g. That there was evidence found of discrimination and discriminatory harassment, which violate the Defendant's policy on Affirmative Action, Equal Opportunity & Diversity ("PAA") by James.

## **PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS**

<u>COUNT I: HOSTILE EDUCATIONAL ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 2000D et. seq. ("TITLE VI") AS TO QCC</u>

25. All prior paragraphs are incorporated by reference as if stated fully herein.

26. This is a claim against the Defendant—QCC.

27. At all times relevant, the Defendant was acting under color of state law.

28. Under Title VI of the Civil Rights Act of 1964, the Plaintiff has a federally protected interest in being free from racial discrimination and to be educated in an environment free from intentional discrimination including racial hostility, physical violence and other racially hostile conduct.

29. The Plaintiff has been subjected to pervasive racially based conduct including discriminatory treatment on the basis of race by the agents and/or employees of QCC, while actin within the scope of their official duties in violation of Title VI.

30. The Defendant's actions and repeated refusals to act caused a hostile educational environment for the Plaintiff during his course of study in QCC's Medical Administration Training class—in violation of Title VI.

31. The racial harassment permitted by QCC has been so severe that it has injured the Plaintiff and adversely affected the enjoyment of, and access to, some or all aspects of QCC's Medical Administration Training class by the Plaintiff, who is a Nigerian student.

   WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus attorney's fees, costs, interest, and further relief to which he is entitled.

## COUNT II
## DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1983

32. The Plaintiff repeats the allegations set for above as if fully contained herein.

33. At all relevant times, the Plaintiff had clearly established rights, under both state and federal law, to be free from discrimination based on his race and to enjoy equal access to the benefits of educational programs/services at QCC.

34. The Defendants, while acting under the color of state law, violated these clearly established rights of the Plaintiff and/or acted with deliberate indifference as to such by way of the aforementioned conduct.

35. Defendant James, in her official capacity as a QCC professor, had the authority, ability, and obligation to not discriminate against students on the basis of their race in the provision of QCC programs/services, or deny/exclude them from enjoying equal access to the benefits of participating in QCC's educational services.  As such, Defendant James's conduct and decisions to act/not act, as described above, constituted official policies and practices of QCC.

36. Defendant QCC employees within the HR Office, Center for Workforce Development & Continuing Education, and Compliance and Education, in their respective official capacities, had the authority, ability, and obligation to investigate student complaints of discrimination, as well as the authority and ability to decide and oversee the manner in which investigations of discrimination were conducted, any discipline implemented as a result, and which staff members were hired and/or fired.  As such, Defendant QCC's conduct and decisions to act or not act, as described above, constituted official policies and practices of QCC.

37. The Defendant, QCC had actual knowledge of the racial discrimination inflicted upon students, including the Plaintiff, by James, via multiple reports/complaints made by the Plaintiff to appropriate QCC staff.  As all times, Defendant QCC had a reasonable opportunity to intervene or stop the discrimination, and to discipline Defendant James because of it, but failed to do so.

38. Instead, Defendant QCC was complicit in the behavior and also participated in the unlawful behavior, acting with deliberate indifference to the rights of the Plaintiff.

39. As a direct and proximate result of the Defendants' willful violations of the Plaintiff's clearly established rights under state and federal law, the Plaintiff has suffered and continues to suffer damages, including but not limited to emotional distress, mental anguish, diminished self-esteem, loss of interest in previous educational pursuits, financial harm, and setbacks in his emotional and educational development.

WHEREFORE, the Plaintiff demands judgment against the Defendants for the above-described damages, plus punitive damages, attorney's fees, costs, interest, and further relief to which he is entitled.

### DEMAND FOR A JURY TRIAL

The Plaintiff demands a trial by jury on all claims herein.

Respectfully Submitted,

The Plaintiff,
By his attorneys,

**/s/ John T. Martin**
John T. Martin, Esq.; BBO # 676344
jmartin@kecheslaw.com
(508) 821-4396
Michaela M. Weaver, Esq.; BBO # 705985
mweaver@kecheslaw.com
(508) 821-4383
Thomas G. Wood, Esq.; BBO # 707877
twood@kecheslaw.com
(508) 659-1044
Keches Law Group
100 Front Street, 20th Floor
Worcester, MA 01608

Dated: September 26, 2022